## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VERONICA WARNER CALLOWAY, as the Personal Representative of the Estate of Cari Jamel Warner, Sr., Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE COMANCHE COUNTY FACILITIES AUTHORITY, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-25-858-PRW |

## ORDER

Before the Court is United States Magistrate Judge Suzanne Mitchell's Report and Recommendation (Dkt. 34), which recommends that the Court grant in part and deny in part Defendant Magdalena Sikora M.D.'s Motion to Dismiss (Dkt. 23). Both Defendant Sikora and Plaintiff Veronica Warner Calloway filed timely objections (Dkts. 35, 36). For the reasons given below, the Court **ADOPTS** Judge Mitchell's Report and Recommendation (Dkt. 34).

### *Background*

Calloway, the mother of a former pretrial detainee at the Comanche County Detention Center ("CCDC"), brings this action on behalf of her son under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment and under Oklahoma law for medical negligence. Calloway's son, Cari Jamel Warner, Sr., died while in CCDC's custody after

1

Sikora, a nephrologist with U.S. Renal Care, allegedly refused to provide treatment for his acute renal failure.

On March 5, 2024, Warner was admitted to Comanche County Hospital, where he received treatment for numerous health problems. A few days later, on March 12, 2024, Warner voluntarily left the hospital and stole a parked car outside the hospital. Police arrested him but, before transporting him to the jail, returned him to the hospital to be "medically cleared for detention at the CCDC."[1] Warner's attending physicians cleared him for detention upon the condition he receive immediate dialysis treatment due to his time-sensitive kidney failure. To help him obtain such treatment, those physicians referred him to Sikora at U.S. Renal Care, where dialysis was set to begin the next day. Around 10:30 a.m. (still on March 12th), a nurse at U.S. Renal Care opened an admission chart for Warner but documented that Sikora and U.S. Renal Care refused to provide him treatment. Warner was eventually taken into custody at CCDC following his discharge from the hospital.

On September 23, 2025, Sikora moved to dismiss all claims against her. She argues that the § 1983 claim fails because Calloway did not allege that Sikora was a state actor or acted with deliberate indifference. She also argues that Calloway's negligence claim fails because it is time barred under Oklahoma law and Calloway failed to allege that Sikora owed the decedent a duty to act as his physician. Judge Mitchell recommends granting the

---

[1] Compl. (Dkt. 1), at 8.

Motion as to the § 1983 claim but denying it as to the medical negligence claim. Calloway objects only to the recommendation that the Motion be granted in part.

### *Legal Standard*

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."[2] An objection is "proper" if it is both timely and specific.[3] A specific objection "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."[4] Additionally, "[a]n 'objection' that merely reargues the underlying motion is little different than an 'objection' that simply refers the District Court back to the original motion papers; both are insufficiently specific to preserve the issue for de novo review."[5] In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.[6]

### *Discussion*

**I.      Sikora's Objections.**

**A.      Calloway alleged a negligence claim against Sikora.**

Sikora first objects to Judge Mitchell's holding that Calloway has sufficiently alleged a negligence claim against her. To state a claim for negligence in Oklahoma, a

---

[2] Fed. R. Civ. P. 72(b)(3).

[3] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

[4] *Id.* (citation and internal quotation marks omitted).

[5] *Vester v. Asset Acceptance, L.L.C.*, No. 1:08-cv-01957-MSK-LTM, 2009 WL 2940218, at *8 (D. Colo. Sept. 9, 2009) (citing *One Parcel of Real Prop.*, 73 F.3d at 1060).

[6] *Summers v. State of Utah*, 927 F.2d 1165, 1167–68 (10th Cir. 1991).

plaintiff must allege "1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care."[7]

Sikora specifically disputes that Calloway satisfied the duty requirement. She argues that the Complaint failed to show she had a physician-patient relationship with Warner, meaning that Sikora did not owe Warner a duty to protect him from injury. In contrast, Judge Mitchell reasoned that, because Sikora had previously interacted with Warner, observed his condition, and knew he needed care, Sikora had indeed established a patient-physician relationship with him.

The Court agrees with Judge Mitchell that, although this case is a close call, Calloway sufficiently pleaded a patient-physician relationship sufficient to survive a motion to dismiss.[8] The Oklahoma Supreme Court has described the duty owed by a treating physician as follows:

> In the absence of an emergency or special circumstances a physician is generally under the duty to give a patient all necessary and continued attention as long as the case requires it. A physician should not leave a patient at a critical stage without giving reasonable notice or making suitable arrangements for the attendance of another equally competent substitute. Failure to observe that professional obligation may subject the physician to liability for patient abandonment.[9]

---

[7] *Smith v. Hines*, 261 P.3d 1129, 1133 (Okla. 2011).

[8] *See* R&R (Dkt. 34), at 20.

[9] *Jackson v. Okla. Mem. Hosp.*, 909 P.2d 765, 774 (Okla. 1995).

Keeping in mind that a complaint does not need to include detailed factual allegations to survive a motion to dismiss,[10] the Court concludes that Calloway has adequately alleged a physician-patient relationship between Sikora and Warner. Here, Calloway alleges that Sikora owed Warner duties to "(1) handle and monitor Warner's medical care in an objectively reasonable and prudent manner; (2) provide Warner reasonable medical care and access to medical care given Warner's appearance and condition; and (3) work with and communicate with the CCDC and other parties involved in Warner's medical care and detention in a reasonable, clear, and prompt manner."[11] Calloway further alleges that "[d]uring each and every unique time that Sikora observed or interacted with Warner, the need for medical intervention and care were so obvious that even a lay person would easily recognize the necessity for further medical attention and care."[12] Accepting these allegations as true and drawing reasonable inferences in Calloway's favor,[13] the Court concludes that Calloway has plausibly alleged that Sikora undertook a physician-patient relationship with Warner and therefore owed him a duty to provide the necessary and continued attention his condition required.

---

[10] Fed. R. Civ. P. 8.

[11] Compl. (Dkt. 1) ¶ 259.

[12] *Id.* ¶ 273; *see id.* ¶ 274.

[13] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

**B.     Calloway's negligence claim is not barred by 12 O.S. § 95(A)(11).**

Sikora next objects to Judge Mitchell's conclusion that 12 O.S. § 95(A)(11)'s statute

of limitations does not apply. Section 95(A)(11) states:

> All actions filed by an inmate or by a person based upon facts that
> occurred while the person was an inmate in the custody of one of
> the following:
>
>     a. the State of Oklahoma,
>     b. a contractor of the State of Oklahoma, or
>     c. a political subdivision of the State of Oklahoma,
>
> to include, but not be limited to, the revocation of earned credits and claims
> for injury to the rights of another, shall be commenced within one (1) year
> after the cause of action shall have accrued[.]

Sikora argues that the one-year time bar should apply because Warner was an

inmate at CCDC at the time his claim for negligence accrued. Judge Mitchell disagreed

with Sikora's argument because, based on the allegations in the Complaint, Sikora denied

Warner's referral before he was taken into CCDC custody.

The statute of limitations is an affirmative defense, so Sikora "bears the burden of

demonstrating that there is no material fact in dispute on the issue of whether the statute of

limitations bars the claim."[14] Sikora has failed to prove that Warner should still be

considered in CCDC custody despite being physically present at the hospital. And it's not

clear from the face of the Complaint whether Calloway's claims are truly barred.

---

[14] *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014).

The Supreme Court of Oklahoma has explained that "a cause of action does not accrue until the claim may be maintained."[15] The operative question, then, is when Calloway's negligence claim accrued. The answer—and, thus, whether § 95(A)(11) bars the claim—depends in large part on the injury Calloway states. Here, the Complaint alleges that Sikora's "negligence increased the risk of injury or disability" and that "Warner had a significant chance [of] recovery before the conduct at issue occurred."[16] Construing the Complaint in the light most favorable to Calloway, these allegations assert that Warner suffered an injury at the time Sikora denied the referral (i.e., allegedly before he was an inmate) by diminishing his chance of recovery, rather than upon his subsequent death. Thus, the Complaint alleges a negligence claim that fully accrued while Warner was at the hospital. The Court therefore agrees with the Report and Recommendation that Sikora has not yet established that the statute of limitation bars this action.

## II.    Calloway's Objections.

Calloway's Objection restates the argument made in her Response to the Motion to Dismiss. Calloway argues that her § 1983 claim satisfies all four grounds the Tenth Circuit uses to determine whether a defendant is a state actor. But she offers no new justification for that positions beyond reasserting the reasons raised in her Response.[17] Calloway therefore fails to specifically identify any legal or factual errors committed by Judge

---

[15] *Brown v. Creek Cnty. ex rel. Creek Cnty. Bd. of Cnty. Comm'rs*, 164 P.3d 1073, 1075 (Okla. 2007).

[16] Compl. (Dkt. 1), ¶ 265.

[17] *Compare* Resp. (Dkt. 27), at 20–23, *with* Obj. (Dkt. 36), at 2–6.

Mitchell in the Report and Recommendation.[18] Thus, reviewing the Report and Recommendation for clear error, the Court agrees with Judge Mitchell that Calloway has not adequately alleged that Sikora's conduct of declining Warner's referral is fairly attributable to the state.[19] As mentioned by Judge Mitchell, Calloway does not allege that Sikora had any connection with CCDC, that CCDC influenced Sikora's decision in any way, that Sikora's medical practice was indispensable to the CCDC, or that Sikora acted jointly with the CCDC.[20] Without more, the Court finds that Calloway has not satisfied any of the Tenth Circuit's grounds for establishing state action, including the public function test, the nexus test, the symbiotic relationship test, and the joint action test.[21]

The Court reviews the unobjected-to portions of the Report and Recommendation to confirm that there is also no clear error on the face of the record.[22] Finding none, the Court concurs with Judge Mitchell's well-reasoned conclusions and analysis.

---

[18] *Paulsen v. Christner*, No. 21-1367, 2022 WL 2165858, at *1 (10th Cir. June 16, 2022) (finding that objections were nonspecific where they "did not specifically address any of the magistrate judge's conclusions" but instead "merely reargued, in the most general fashion, the merits of his claims" (citing *One Parcel of Real Prop.*, 73 F.3d at 1060)). Regardless, whether reviewing for clear error or conducting de novo review, the Court would reach the same conclusions as contained in the Report and Recommendation.

[19] *Barnett v. Hall, Estill, Hardwick, Gable Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) ("At the heart of each test is 'whether the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State.'" (quoting *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 387 (10th Cir. 2016))).

[20] R&R (Dkt. 34), at 9–13; Compl. (Dkt 1).

[21] *See Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1992)).

[22] *Summers*, 927 F.2d at 1167–68.

*Conclusion*

Accordingly, the Court **ADOPTS** the Report and Recommendation (Dkt. 34) and

**GRANTS IN PART** and **DENIES IN PART** Sikora's Motion to Dismiss (Dkt. 23).

**IT IS SO ORDERED** this 6th day of July 2026.

_____

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE